[Crim. No. 585.   Third Appellate District.—November 30, 1921.]

THE PEOPLE, Respondent, v. E. CAPELLI, Appellant.

[1] INTOXICATING LIQUORS—WYLLIE LOCAL OPTION LAW—EFFECT OF VOLSTEAD ACT.—The Wyllie local option law (Stats. 1911, p. 599), whenever its prohibitory provisions are given practical operation in the manner prescribed thereby, is in nowise repugnant to or inconsistent with, but, as far as it goes, operates as in furtherance of, the purposes of the act of Congress known as the "Volstead Act."

[2] ID.—LICENSING OF SALE IN "DRY" TERRITORY—INVALID PROVISION OF WYLLIE LAW — EFFECT OF — VALID PROVISIONS UNAFFECTED.—The invalidity, by virtue of the eighteenth amendment to the federal constitution and the congressional legislation designed to enforce the terms of such amendment, of section 11 of the Wyllie local option law, which sanctions the licensing of the sale of intoxicating liquors in any district which has been previously voted "dry" if the majority of the electors so declare, does not render the other provisions of the law invalid, since the provisions of section 11 are subsidiary to the main purpose of the act and not essential to its validity.

APPEAL from a judgment of the Superior Court of Mendocino County.   H. L. Preston, Judge.   Affirmed.

The facts are stated in the opinion of the court.

W. D. L. Held and M. H. Iverson for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged with the violation of the provisions of the so-called "Wyllie local option law" under an information, filed in the superior court of Mendocino County by the district attorney thereof, and which charged him with willfully and unlawfully keeping and conducting a place where alcoholic liquor was sold, served, and distributed within the boundaries of the first supervisorial district of said county and outside the corporate limits of

---

1. Construction and effect of "Volstead Act," note, 10 **A. L. R.** 1553.

any city or town, said supervisorial district "being then and there no-license territory."

This appeal is by the defendant from the judgment of conviction.

The sole question in this case is whether the Wyllie liquor law, under the provisions of which defendant was convicted, has been superseded or invalidated by the act of Congress known as the "Volstead Act," 41 Stat. 305 [Fed. Stats. Ann. (Supp. 1919), p. 202; U. S. Comp. Stats. (1919 Supp.), p. 2678], the object of which is the enforcement of the terms of the eighteenth amendment to the federal constitution. The contention of the appellant is that the effect of the enactment of the Volstead Act is necessarily to render nugatory or without force the provisions of the Wyllie law. The Wyllie liquor law, as it may conveniently be termed, was passed by the legislature of 1911 (Stats. 1911, p. 599), and the first section thereof provides: "Qualified electors of any incorporated city or town, or of that portion of any supervisorial district not included within the boundaries of any incorporated city or town, numbering not less than twenty-five per cent of the number of votes cast for all candidates for governor in the territory described in the petition, at the last preceding election for governor of the state, may petition the city council, board of trustees or other legislative body of such city or town or the board of supervisors of the county in which such supervisorial district is situated, to call an election to vote upon the question, whether the sale of alcoholic liquors shall be licensed in such city, town, or supervisorial district outside of incorporated cities and towns."

The tenth section of the act reads: "Unless a majority of the votes cast on this question at such election are in favor of license, the territory described in the petition shall be no-license territory on and after ninety days from the date of said election; and the city council, board of supervisors or other governing body having jurisdiction thereof, shall thereupon make an entry on its records declaring that such described territory is no-license territory; but a failure to make such entry shall not affect the result or effect of such election."

The eleventh section is as follows: "When any city, town, or supervisorial district outside of incorporated cities and

towns, becomes no-license territory it shall remain such until at a subsequent election, called, as herein provided, to vote on the question of whether the sale of alcoholic liquors shall be licensed therein, a majority of the votes cast on that question are in favor of license. It shall thereupon cease to be no-license territory within the meaning of this act.''

Of the Wyllie Act, in speaking of the effect thereof upon a municipal ordinance designed to prohibit traffic in alcoholic liquors, this court, in *Ex parte Anixter,* 22 Cal. App. 117, 120 [134 Pac. 193], had this to say: ''That law, it is very true, applies to the whole state, and it is therefore, a general law in the truest sense, and would have to be so to be constitutional, but its purpose is not, and nowhere can there be found in any of its provisions any language disclosing an intention to prohibit, *ex proprio vigore,* the retail sale of intoxicating liquors throughout the state or in any subdivision thereof. It merely constitutes and involves a general scheme whereby the electors of certain designated territories in the state may determine for themselves whether, within such territories, the sale of such liquor may or may not be licensed and carried on.''

We adhere to the above brief exposition of the nature and scope of the Wyllie law, and further declare, notwithstanding the asseveration of the attorney-general in his brief to the contrary, that it is strictly a local option law, which is described by Bouvier's Law Dictionary as ''a right granted by legislative enactments to the inhabitants of particular districts to determine by ballot whether or not licenses shall be issued for the sale of intoxicating liquors within such districts''; or as it is defined upon the authority of numerous cases in 25 Cyc., page 1534, the term ''local option implies the grant of the right to one locality to adopt and another to decline to avail itself of a law.'' (See, also, *Ex parte Handler,* 176 Mo. 383, 389 [75 S. W 920]; *State* v. *Brown,* 19 Fla. 563, 598; *State* v. *Barber,* 19 S. D. 1 [101 N. W. 1078, 1081]; Cooley's Constitutional Limitations, 146; *In re O'Brien,* 29 Mont. 530, 546 [1 Ann. Cas. 373, 75 Pac. 196]; *Boyd* v. *Bryant,* 35 Ark. 69, 73 [37 Am. Rep. 6].) Nor are we in accord with the theory of the attorney-general that the Wyllie law, in analogy to the situation as to the insolvency laws existing in the

states at the time of the enactment of the national bankruptcy law, is suspended until its provisions are invoked by any of the geographical units contemplated by the statute. The insolvency laws of a state are practically "a dead letter" so long as there exist national bankruptcy laws, although it may be true that a repeal of the latter would operate to revive the former as they existed at the time of the enactment of the bankruptcy laws; but, as suggested, while the national bankruptcy laws are in force, the state Insolvency Act can no more be put into operation than may a law which has been repealed. While it is true that the operation of the Wyllie law remains dormant until its provisions may be or are invoked by the electors of certain of the indicated subdivisions of the state, the law is, nevertheless, in effect and is as much a part of the legal system of the state as any other law. If this were not true, the provisions of the law could never be applied by a resort thereto in the manner pointed out by its own provisions. But this discussion, it seems to us, is entirely *dehors* the real question which is submitted here for solution and the points which must be considered in the decision of that question.

The learned counsel for the appellant, in support of the theory upon which they urge the validity of this appeal, argue that, since the provisions of the Wyllie law are not self-executing or do not, *ex vi termini,* operate to prohibit traffic in intoxicating or alcoholic liquors, and since, furthermore, it also authorizes the electors of any of the subdivisions, after any such territory or district has been duly voted a no-license territory to vote upon the question of whether the sale of alcoholic liquors shall be licensed therein with the result that such territory or district shall cease to be no-license territory within the meaning of said act, the said act is necessarily nullified by the provisions of the Volstead Act. In other words, counsel for the appellant do not contend that the eighteenth amendment or the Volstead law supersedes any legislation, state or local, which by its terms is prohibitory in its nature, but concede that if the Wyllie law, by its terms, involved a direct inhibition against the traffic in alcoholic liquors, and the force thereof were not destroyed by the provision therein giving to the electors of any particular geographical unit

the right to do that which the federal laws prohibit, namely, to declare by their votes that within the limits of such unit the sale of alcoholic liquors may be licensed, then neither the effect of the amendment to the federal constitution prohibiting the manufacture, sale, etc., of intoxicating or alcoholic liquors nor that of the legislation by Congress designed to enforce said amendment would be to render said state law invalid.

In the recent case of *People* v. *Collins,* 54 Cal. App. 531 [202 Pac. 344], the defendant was convicted under the Wyllie Act of the crime of selling alcoholic liquor in "no-license territory." On his appeal to this court he contended, as it is here contended, that the Wyllie Act, "was superseded and rendered inoperative by the National Prohibition Act known as the Volstead Act and, therefore, his conviction was void." In reply to the contention this court said: "It is sufficient to refer to *In re Volpi,* 53 Cal. App. 229 [199 Pac. 1090], and *Ex parte Crookshank,* 269 Fed. 980." 

Both the Volpi and Crookshank cases involved municipal ordinances prohibiting the manufacture, sale, etc., of alcoholic liquors within the limits of the respective municipalities concerned therein, and the question submitted and decided in each case was whether or not the power in a municipality to enact and enforce within its limits an ordinance prohibiting the sale of liquor and not inconsistent with the eighteenth amendment to the federal constitution or the Volstead Act was destroyed by said amendment or the congressional legislation referred to. In each of said cases it was held (and, of course, properly) that the state or any of its political subdivisions, by virtue of the police power, inherent in the people of the former and expressly granted by the people through their constitution to the latter, may enact any legislation looking to the enforcement of the federal laws prohibiting the manufacture, sale, etc., of alcoholic liquors and that, therefore, the ordinances considered in said cases involve a valid exercise of such power. In neither of those cases, however, was the Wyllie Act involved; nor were there presented and urged in the Collins case, *supra,* the points advanced here in impeachment of the validity of the Wyllie Act as the direct effect of the federal laws, constitutional and legislative, prohibit-

55 Cal. App.—30

ing the manufacture, sale, and transportation of alcoholic liquors for beverage purposes. It will hence be necessary to consider the question whether the force of the Wyllie law has been destroyed or in anywise impaired by the federal constitutional amendment or the congressional legislation referred to more extendedly than it was found necessary to do in the Collins case.

[1] The Wyllie Act is a state law, and, as is said in the Anixter case, *supra,* and as is obviously so, it is in the truest sense a local option law. It in effect declares to the electors of certain designated geographical subdivisions of the state that it is optional with them whether they will avail themselves of its prohibitory provisions and so suppress or disallow the sale of alcoholic liquors within such subdivisions, and if, in any given case, the electors, according to the *modo et forma* pointed out by the act, invoke the prohibitory provisions thereof, then the act, in so far as the district thus affected is concerned, becomes *ipso facto* a prohibitory law or enactment—as much so, indeed, as if such an act were enacted by the people of the whole state under the power of the initiative or referendum. In other words, the exercise by the electors within any of the territorial units or subdivisions designated in the Wyllie Act of their option to avail themselves of the prohibitory provisions thereof at once makes that act, as to such unit or subdivision, a prohibitory law. It then stands, as to such territorial subdivision, precisely the same as though the legislature, if it were not fettered by constitutional restrictions as to the passage of special laws, had passed a law directly prohibiting the sale or possession of alcoholic liquors within such unit or subdivision. It follows, therefore, that the Wyllie Act, whenever its prohibitory provisions are given practical operation in the manner prescribed thereby, is in nowise repugnant to or inconsistent with, but as far as it goes (while, of course, not specifically intended for that purpose) operates as in furtherance of the purposes of the Volstead Act. (*Ex parte Volpi, supra; Ex parte Crookshank, supra; People v. Collins, supra.*)

[2] It now remains to be determined whether, in view of the eighteenth amendment to the federal constitution and the congressional legislation designed to enforce the terms of said amendment, the effect of section 11 of the

Wyllie law is to invalidate the force of the whole act.
Section 11 of the Wyllie Act, it will be observed, in effect
sanctions the licensing of the sale of intoxicating liquors
in any district or city or town which has previously been
voted "dry" by providing that alcoholic liquors may be
dispensed therein if a majority of the electors of such dis-
trict or city or town cast their votes at an election held for
that purpose "in favor of license." Obviously, the federal
constitutional amendment and the Volstead Act have ren-
dered that section of the Wyllie Act absolutely void and
nugatory; but it does not follow from the fact that said sec-
tion is invalid or incapable of enforcement that thereby
the whole act of which it is a part must fall. It is perfectly
plain that, in the enactment of the Wyllie law, the principal
or central purpose of the legislature was to provide a mode
whereby the traffic in alcoholic liquors in California could
be suppressed. It was, in other words, undoubtedly in-
tended as a step looking to prohibition, leaving it, how-
ever, to the electors themselves of certain indicated local
communities whether they would avail themselves of the
prohibitory provisions of the act. This, we say, was unques-
tionably the main or principal motive actuating the legis-
lature in enacting the law. The incorporation into the law
of section 11, which in effect authorized the electors of any
territorial unit or subdivision by a majority vote at an elec-
tion held for that purpose to nullify the force and effect of
the prohibitory provisions of the law previously invoked
therein, involved only a secondary or subsidiary consider-
ation—that is to say, it is clear that it was not the con-
trolling consideration prompting the enactment of the law.

It is manifest that section 11 could have been in the
first instance or originally eliminated from the act, or, in
other words, not incorporated into the act by the legis-
lature as among the provisions thereof, and still the legal
integrity of the prohibitory provisions of the statute would
not have been impaired but the act in itself would have been
complete for the evident paramount purpose or object for
which it was designed, namely, to enable electors within
the indicated territorial subdivisions to avail themselves of
its provisions with a view of suppressing the traffic in in-
toxicating liquors within the limits of such subdivisions.

Thus it is plainly manifest that section 11 and the prohibitory provisions of the statute are not interdependent, or the one part so dependent upon the other as that the invalidity of said section 11 has the effect of rendering invalid the other provisions.

It is a familiar and cardinal canon of statutory construction that, "if the different parts of the statute are severable and independent of each other, and the provisions which are within the constitutional power of the legislature are capable of being carried into effect after' the void part has been eliminated, and it is clear from the statute itself that it was the intent of the legislature to enact these provisions (the prohibitory provisions of the Wyllie Act) irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if these provisions were not there." (*Hale* v. *McGettigan et al.,* 114 Cal. 112, 119 [45 Pac. 1049, 1052].) Again, in the same case,' beginning at the bottom of page 119,' it is said: "For the purpose of statutory construction, the intention of the legislature, as shown by the general scope and purpose of the law, is to be ascertained. . . . And, if the general scope of an act is within its power, the act is not to be rendered null by reason of a *subsidiary provision* which was beyond its power to enact. *If the manifest purpose of the legislature can be carried into effect by upholding the act and disregarding such subsidiary provisions, that purpose will not be defeated by an unconstitutional provision contained in a subordinate section in the act.*" (See, also, *Robinson* v. *Bidwell,* 22 Cal. 379; *People* v. *Todd,* 23 Cal. 181; *Maclay* v. *Love,* 25 Cal. 367; *People* v. *Whyler,* 41 Cal. 351; *Ex parte Gerino,* 143 Cal. 412 [66 L. R. A. 249, 77 Pac. 166]; *In re Mitchell,* 19 Cal. App. 567, 573 [126 Pac. 856].)

As above declared, it is very clear that the provisions of section 11 are subsidiary to the main purpose of the Wyllie Act and it is equally clear that that section is not essential to the validity of the act for the principal purpose for which it was enacted.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 26, 1922.

All the Justices concurred.